J-S37016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| R.A.G. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| A.L.R. | |
| Appellant | No. 328 MDA 2014 |

Appeal from the Order entered January 23, 2014
In the Court of Common Pleas of Cumberland County
Civil Division at No: 2011-4372

BEFORE:  LAZARUS, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JULY 31, 2014**

A.L.R. ("Mother") appeals from the January 23, 2014 custody order entered in Court of Common Pleas of Cumberland County, modifying a March 2012 Parenting Plan and granting R.A.G. ("Father") primary physical custody of M.E.R. ("Child").  Finding no abuse of discretion on the part of the trial court, we affirm.

Mother and Father are the biological parents of Child, who was born out of wedlock on September 4, 2009.  As the trial court explained:

> Father brought this action seeking primary custody in May 2011.  After five (5) conciliations were fruitless, an initial custody trial was held in March 2012 with a parenting plan order issued on 13 March 2012.  That plan gave the parties shared legal custody with primary physical custody with Mother and "weekend" overnights with Father.  Mother appealed that decision and the parenting plan was affirmed by the appellate court.  Father has filed eight (8) petitions for contempt alleging that Mother is interfering with the time he was given in the parenting plan, five

1

prior to the affirmance and three subsequent to it. All were initially sent to conciliation in an attempt to allow the parents to actually make a joint parental decision. This attempt failed. Father has also requested a modification of the custodial parenting plan. Following an additional December 2013 custody trial, where the record was kept open until 8 January 2014 to allow counseling and to receive the co-parent counselor's final report, the request for modification was granted. The 23 January 2014 Custody Modification Order gave Father primary physical custody and provided the specific start of the educational development plan.

Trial Court Opinion ("T.C.O."), 1/23/14, at 1-2.[1]

Mother filed a timely appeal from the January 23, 2014 order and identified eight alleged errors in her statement of errors complained of on appeal filed pursuant to Pa.R.A.P. 1925(a)(2). She asks this Court to consider two of those alleged errors in this appeal:

1. Did the lower court abuse its discretion when it exercised manifestly unreasonable judgment in transferring primary physical custody of [Child] from [Mother] to [Father], contrary to [Child's] best interests?

2. Did the lower court abuse its discretion when it rendered a decision resulting from partiality, prejudice, bias, or ill will against [Mother], contrary to [Child's] best interests?

---

[1] We note at the outset the role of maternal grandmother ("Grandmother") in Child's life. Child resided with Grandmother from the time of her birth. Grandmother exclusively cared for Child from the time Child was four months old until she was 17 months old while Mother was incarcerated and Father was not involved in Child's life. Grandmother has been Child's means of transportation throughout her young life because Mother's driving privileges are suspended and cannot be restored until 2018. Nonetheless, Grandmother is not a party to these proceedings. While her important role in Child's upbringing is unquestioned, the trial court recognized that the issue of custody was to be decided between Mother and Father. At the same time, the trial court welcomed Grandmother's continued involvement in Child's life. *See* T.C.O. at 9; Trial Court Opinion Pursuant to Pa.R.A.P. 1925(a) ("1925(a) Opinion"), 3/24/14 at 6.

2

Mother's Brief at 13.

This Court recently reiterated the applicable scope and standard of review as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

In her first issue, Mother asserts that the trial court abused its discretion by transferring primary physical custody of Child from Mother to Father, contrary to Child's best interests. "The best interest standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006), citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004). The factors to be

considered by the court when awarding custody are set forth in 23 Pa.C.S.A. § 5328(a).[2]

Section 5328(a) provides:

§ 5328. Factors to consider when awarding custody.

(a) *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

---

[2] In her brief, Mother addresses the sixteen factors listed in § 5328(a) but she has rearranged and renumbered the factors. Father addresses the factors in the same order as Mother. In its January 23, 2014 opinion, the trial court addresses the § 5328(a) factors in the order presented in the statute but assigns letters to the enumerated factors. For the sake of clarity, we shall address the factors in the order presented in the statute with references to the corresponding pages in the parties' briefs and the trial court opinion where appropriate.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[3]

In ***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014), this Court held:

---

[3] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services). Because Father's petition to modify was filed prior to the effective date of the subsection, the subsection does not apply to the present case. ***See*** § 6 of 2013, Dec. 18, P.L. 1167, No. 107, effective 1/1/14.

> "**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.,*** [] 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). . . .
>
> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.,*** [] 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, [] 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. ***A.M.S. v. M.R.C.***, [] 70 A.3d 830, 835 (Pa. Super. 2013).
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.,*** [] 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [] 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***Id.*** at 822-823.

Mother asserts that no basis for a change in custody exists based on "[w]hich party is more likely to encourage and permit frequent and continuing contact between the child and another party." Mother's Brief at 54-56, addressing 23 Pa.C.S.A. § 5328(a)(1). Mother relies on her own testimony as evidence that she has encouraged continuing contact between Child and Father. However, based on all the testimony the trial court concluded, "[w]hile neither parent individually stands out as the domin[ant] promoter of the continuing contact between [Child] and the other parent,

6

Mother has shown negatively that she will not cooperate with Father unless it is by her own rules." T.C.O. at 4.

Our review of the record reveals competent evidence supporting the trial court's conclusion. For example, Mother expressed concerns about Father's lack of involvement or interest in Child's activities, including his refusal to take Child to activities, failure to offer to pick up or drop Child off at functions or classes, and insistence that Mother not schedule appointments during his custodial time. Mother's Brief at 55. However, Father testified that Mother's actions made contact with Child difficult, specifically that she made threats and argued about holiday and regularly scheduled visits, N.T., 8/8/13 at 7-8, failed to make or receive required phone calls so Father can speak with Child, *id.* at 12-14, and failed to abide by the default holiday schedule, *id.* at 15-21 and 24-26. Although Mother disputed Father's assertions, Mother's own emails to Father belie her denials as evidenced by her testimony during cross-examination by Father's counsel:

> COUNSEL: [] Has he ever offered to pick [Child] up? Drop [Child] off?
>
> MOTHER: No, he has not.
>
>                 * * *
>
> COUNSEL: This is an e-mail from [Father] to you on Saturday, January 19th; is that correct?

MOTHER: That's correct.

COUNSEL: Can you read the highlighted portions?

MOTHER: I will pick [Child] up after her class.

COUNSEL: Okay. Is that an offer to pick [Child] up after gymnastics class?

MOTHER: I guess it is.

COUNSEL: Has he ever offered to attend school functions?

MOTHER: No, he has not. Has he ever showed? No.

* * *

COUNSEL: And this is an email from [Father] to you on Monday, April 15th; is that correct?

MOTHER: That is correct.

COUNSEL: Okay. Can you please read the e-mail?

MOTHER: What kind of school thing? If you tell me where it is then I can bring her at 6.

COUNSEL: Have you ever spoken negatively to [Father] to the personnel at [Child's] school?

MOTHER: No, I have not.

* * *

COUNSEL: And this is an e-mail from you to [Father] on Monday, April 15th, is that correct?

MOTHER: That is correct.

COUNSEL: Can you please read it?

MOTHER: I got tickets for only me, [Mother's other son] and my mom because you don't want anything to do with her school.

* * *

COUNSEL: Has [Father] offered to accompany [Child] to any of her appointments?

MOTHER: No, he has not.

COUNSEL: Has he ever suggested to you the possibility of scheduling appointments during his periods of physical custody?

MOTHER: He told me do not put them during his time of physical custody. He even told [Child's play therapist] that. He did not want any appointments during his time. He can lie all he wants in e-mails and state [sic], it doesn't mean he is going to do it.

* * *

COUNSEL: Any this is an e-mail from [Father] to you on Friday, November 30th, is that correct?

MOTHER: That is correct.

COUNSEL: Can you please read the highlighted portion?

MOTHER: From now on you can make [Child's] appointment on Monday or Friday at 4:00 p.m. or later or if you let me know it is

on Thursday, then I can decide on that times the doctor—we can call and schedule an appointment.

*Id.* at 83-86.

When considering which parent is more likely to encourage and permit frequent and continuing contact, the trial court stated that "Father has shown willingness to do so." T.C.O. at 4. Despite Mother's insistence to the contrary, there is sufficient competent evidence to support the trial court's conclusion.

Mother acknowledges that the trial court found no evidence of abuse by either party or a family member to warrant a custody determination based on § 5328(a)(2). Mother's Brief at 44. While the trial court suggested that, "[a]t worst, the parents could be described as being self-destructive," T.C.O. at 4-5, we agree with Father's suggestion that the trial court's statement "was likely attributable to the long history of animosity and communication difficulties that exist between the parties." Father's Brief at 19. Clearly, the trial court was not concerned with any threat of abuse by either Mother or Father or members of their respective households and there is no competent evidence of record to suggest otherwise.

Mother contends there has been no change in the parental duties performed by each party on Child's behalf since the initial custody order issued in 2012. Mother's Brief at 56 (addressing 23 Pa.C.S.A. § 5328(a)(3)). She acknowledges, and the trial court agrees, that both

10

parties rely on extended family to meet Child's needs. *Id.* The trial court did not cite the issue of performance of parental duties as a specific basis for its custody ruling but clearly did consider it, as required.

Mother addresses at great length the "need for stability and continuity in the child's education, family life and community life." Mother's Brief at 25-39 addressing 23 Pa.C.S.A. § 5238(a)(4). Mother offers reasons she believes a change in custody is unwarranted and contends the trial court failed to consider the effect that a change in physical custody would have on Child. The record does not support her assessment. The trial court consistently noted in its opinions the fact that Mother and Father are loving, caring and fit parents. However, the trial court also recognized that Child has "never known peace or stability" in her lifetime. T.C.O. at 1. From the time the court awarded shared physical custody in March 2012 until the time of the August of 2013 hearing, Father filed eight contempt petitions alleging Mother's interference with the parenting plan. The trial court described that parenting plan as a "positive and encouraging parenting plan [] initially crafted to promote the long term developmental needs of the parties as bifurcated parents and the ongoing custodial needs of [Child]." T.C.O. at 3. The parties, while considered "independently to be fit parents, . . . were directed that '[Child's] future development—physically, intellectually, morally and spiritually—requires that both parents step up now and take a greater role in raising [Child].'" *Id.* Despite the trial court's charge to the parents

to step up, "Mother has been dilatory, obdurate and vexatious toward the letter, spirit and intent of this court order in denying Father this opportunity." *Id.* The trial court explained further:

> The stated intention of the initial custody plan was not to dictate or micromanage the parents but rather to allow the parents to grow into their roles within a framework with both parents having significant time with [Child]. It was only after much consideration that this court found the custody of [Child] needed changed; it was clear that her future and welfare was clearly being endangered by Mother's unilaterally selfish and myopic actions.

*Id.* at 4.

Father and his wife testified that they have a loving and stable home and that Child loves being there. N.T., 8/8/13 at 33 and 122. Their work schedules, combined with their proximity to Father's parents, enable them to be available to Child at all times. *Id.* at 40. Mother works full-time and relies on Grandmother to care for and transport Child. *Id.* at 47 and 132-33. Yet Mother believes Child's interests would be better served by "start[ing] back over again how it is supposed to be" and reducing Father's time with Child to "maybe one day a week for a couple hours." *Id.* at 78. The testimony supports the trial court's determination that stability and continuity in Child's life are better served by shifting primary physical custody to Father. The court's hope that the new arrangement will lead to greater shared custody and involvement by both parents is a reflection of the trial court's paramount concern for the best interests of Child.

12

The trial court next weighed the availability of extended family and Child's sibling relationships as provided in 23 Pa.C.S.A §§ 5328(a)(5) and (6) and concluded "both environments appear stable and each has unique growth and development benefits to offer [Child]." *Id.* at 5-6. We find competent evidence to support that conclusion.

The next enumerated factor to be considered when awarding custody is the "well-reasoned preference of the child, based on the child's maturity and judgment." 23 Pa.C.S.A § 5328(a)(7). Child did not testify during the hearing, which commenced prior to Child's fourth birthday and concluded a few months later. The trial court determined Child was not capable of making a choice but noted that, if asked, she would want to be with Grandmother. T.C.O. at 6. As explained in n.1, *supra*, Grandmother is not a party to this action but her continued involvement in Child's life is invited and reinforced in the new parenting plan. 1925(a) Opinion at 6.

A trial court must also consider whether either parent attempts to turn a child away from the other parent. 23 Pa.C.S.A. § 5328(a)(8). Mother suggests neither parent has done so. Mother's Brief at 58. Father argues that Mother has made many attempts to turn Child against Father. Father's Brief at 28. While much of Father and Mother's testimony can be characterized as "he said/she said," a review of the testimony offered by Child's play therapist supports the conclusion that Mother has made attempts to turn Child away from Father.

Child was referred to the therapist by Child's pediatrician "through [Mother]" because Child "had started visitation with [Father] and there were some concerns about the transition times and the anxiety that [Child] was displaying." N.T., 11/21/13 at 7.[4] Based on "the story" relayed by Mother, the therapist understood the commencement of visitation with Father was done very abruptly and believed the transition was hard on Child. *Id.* at 9-10 and 15. Yet, the therapist was unaware that there had been four months of visits with Father pursuant to a temporary custody schedule prior to initiating any overnight visits. *Id.* at 16. She was also unaware that the initial visit with Child in January 2012 occurred 11 days after the issuance of the order scheduling the initial custody hearing for February 29, 2012. *Id.* at 17. She was not certain whether she knew that, concurrent with the third and fourth visits with Child, Father had filed two contempt petitions due to Mother's refusal to follow the court's March 13, 2012 custody order. *Id.* at 18. After seeing child on March 26, 2012, the therapist saw Child once in April, twice in May and then not again until September, three weeks prior to a scheduled October 4 contempt hearing, although she did not know any reason for the gap in sessions. *Id.* at 19. She next saw Child on October 8 but not again until January 14, 2013. *Id.* When asked if she was suspicious that Child's appointments coincided with court filings or hearings, she replied that she "was not necessarily privy to that" and "that was not [her] part of

---

[4] Father did not believe that Child needed therapy but gave his consent and signed the necessary forms. N.T., 11/21/13 at 12.

the reason that [she] would be seeing [Child]." *Id.* at 20. She did acknowledge that Mother and Grandmother were the sources of information concerning difficulties Child reportedly had with Father. *Id.* at 21.

The trial court determined that "Mother is constantly thwarting Father's attempts to build a parent/child relationship unless it is under her dominion and control." T.C.O. at 6. We find that there is competent evidence to support the trial court's conclusion, as demonstrated above in our discussion of § 5328(a)(1), as evidenced by Mother's actions that resulted in Father filing eight contempt petitions, and as shown in the testimony of Child's play therapist.

Another factor the trial court must examine is "[w]hich party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs." 23 Pa.C.S.A §5328(a)(9). Mother and Grandmother testified that Child was cared for and happy in Grandmother's home, *see, e.g.,* N.T., 8/8/13 at 49-51; 61-62; 132-33; and 144, just as Father and his wife claimed Child was cared for and happy in their home. *Id.* at 33; 110-14; and 122. There is competent evidence to support the trial court's conclusions that "[t]he parents' homes are not an issue as both homes, with the assistance and support of family, are nurturing in their own ways. It is the way Mother tries to dictate what occurs in Father's home, which she cannot control, that causes strife." T.C.O. at 6.

15

Competent evidence also supports the trial court's determination regarding the related factor of "[w]hich party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child." 23 Pa.C.S.A. § 5328(a)(10). Again, Mother, Grandmother, Father, and Father's wife all testified as to how Mother and Father attend to Child's needs. *See, e.g.,* N.T., 8/8/13 at 49-51; 61-62; 132-33; 144; 33; 110-14; and 122. They also testified concerning Child's educational needs, which Mother believed were served in Mother's school district and Father believed would be served by enrolling Child in his school district at a location that was approximately halfway between the parties' homes. *Id.* at 52-23; 87-89; and 27-29. The trial court specifically addressed the educational needs of Child and ordered that an educational plan be developed without commenting on the other needs outlined in §5328(10). T.C.O. at 6. Mother suggests that the trial court erred in focusing only on the educational needs while ignoring the other needs mentioned in the subsection. Although we recognize that the trial court did not specifically discuss the other needs, it did address them by implication throughout its opinion and in its Rule 1925(a) opinion when it concluded that both parents' homes are nurturing and that support systems are in place to meet Child's emotional and other needs. T.C.O. at 3; 5-6; 9.

The trial court considered the proximity of the parties' residences as required by 23 Pa.C.S.A. § 5328(a)(11) by simply noting the distance is 18

miles. T.C.O. at 6. Neither party discusses this factor other than to note the distance is 18 miles, as the trial court indicated. There is competent evidence to support the trial court's conclusion with respect to this factor.

The trial court next addressed each party's availability to care for Child or make appropriate child-care arrangements, 23 Pa.C.S.A. § 5328(a)(12), and determined, "Mother's lack of [a] license makes her dependent on others when making arrangements, whereas Father has independent abilities. Both are supported by their extended families." T.C.O. at 7. Mother argues the trial court abused its discretion in this regard because Mother also lacked a license at the time of the 2012 order granting Mother primary physical custody. We disagree with Mother's assertion that the trial court abused its discretion by simply making a factually accurate statement. Further, the testimony revealed that Grandmother cares for Child in Mother's absence, N.T., 8/8/13 at 114, whereas either Father and/or his wife are home at all times. *Id.* at 121. The trial court recognized that both parties are supported by their extended families and did not suggest that Mother's lack of a license was a determining factor in its decision. Because we find the trial court's statement is supported by competent evidence, we disagree with Mother's assertion that the trial court abused its discretion.

The trial court also considered "[t]he level of conflict between the parties and the willingness and ability of the parties to cooperate with one another." 23 Pa.C.S.A. § 5328(a)(13). The trial court concluded that "[t]he

parties obviously cannot fully cooperate to promote the best interest of [Child], even with the proper encouragement." T.C.O. at 7. "Mother is akin to the playground bully who takes the ball and will not let others play unless they play by her rules. Father has become like a dog that has been abusively disciplined too much and is in constant protection mode from further abuse." *Id.* There is competent evidence throughout the testimony presented at the August 8, 2013 hearing, a taste of which is provided in our various citations to the hearing transcripts, to support the trial court's evaluation of the level of conflict and the ability of the parties to cooperate.

Examining "[t]he history of drug or alcohol abuse of a parent of member of a party's household," 23 Pa.C.S.A. § 5328(a)(14), the trial court observed, "Mother's drug and alcohol abuse have been previously noted and are well chronicled in her criminal history of repeated arrests and multiple periods of incarceration. It is unknown when Mother's parole period ends." T.C.O. at 8. Mother argues that a parent's past behavior should carry little weight when making a custody determination unless that conduct has an ongoing harmful effect on the child. Mother's Brief at 53. Despite her protestation, we find there is competent evidence in the record to support the trial court's statement, which is merely a factual statement. Further, the trial court recognized that, "Mother has multiple convictions of an enumerated offense under Chapter 38 or Title 75 of the Pennsylvania Code

18

and *[crimen] falsi* convictions. Father has not alleged, nor has the court determined, that Mother poses a threat of harm to [Child]." T.C.O. at 3.

The final specific factor to be considered by the trial court is "[t]he mental and physical condition of a party or member of a party's household." 23 Pa.C.S.A. § 5238(a)(15). The trial court indicated that, "Father is on prescribed pain medication for pain management, which has not impacted his ability to work or parent. Mother's addiction has been duly noted." T.C.O. at 8. Mother does not challenge the trial court's statement concerning her addiction but instead challenges the conclusion that "Father is 'taking the therapeutic dosages' and that his ability to parent is not affected." Mother's Brief at 60. Despite Mother's contention, we conclude there is competent evidence to support the trial court's statements. Father testified that a report was made to Children and Youth that Father and his wife were drug addicts and neglectful to their children. Following interviews and urine testing, the investigation was closed. N.T., 8/8/13 at 8-10. There was no suggestion that Father is a drug abuser, other than Mother's testimony stating she has learned from her own experience "how to detect that type of stuff." *Id.* at 77.

In addition to the fifteen enumerated factors, the trial court is to consider "any other relevant factor" when awarding custody. 23 Pa.C.S.A. § 5328(a)(16). The trial court explained:

> It was directed that [Child] should spend as much time with both Mother and Father as possible while she can before being limited

19

> by school and other outside activities. Inexplicably, Mother violated the spirit and intent of this directive each and every time she denied court-ordered custody to Father and more so when denying a reasonable request for additional time by Father.

T.C.O. at 8. There is competent evidence in the record to support the trial court's statement.

Having reviewed the evidence of record, we conclude that there is competent evidence of record to support the trial court's evaluation of the § 5328(a) factors. We recognize that certain aspects of the trial court's conclusions are based on its assessment of the credibility of the parties. "[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses." **A.V.**, 87 A.3d at 820 (quoting **R.M.G., Jr. v. F.M.G.**, 986 A.2d 1234, 1237 (Pa. Super. 2009)). Further:

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

**Id.** As stated previously, the test this Court must employ is whether the trial court's conclusions are unreasonable as shown by the evidence of record. **V.B.**, 55 A.3d at 1197. We may reject those conclusions only if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court. **Id.** We conclude that the trial court's consideration of the best interest of the child was careful and thorough.

20

Because the trial court did not commit error of law and because the trial court's conclusions are not unreasonable, we find no abuse of discretion on the part of the trial court for modifying the prior custody order to give father primary physical custody. Mother's first issue fails.

In her second issue, Mother asserts that the trial court's award of primary custody to Father constitutes an abuse of discretion because the decision resulted from "partiality, prejudice, bias, or ill will" against Mother and contrary to Child's best interests. Mother's Brief at 13. Again, of paramount importance is the best interest of the child. *Saintz*. Mother contends that the language used by the trial court when referring to Mother and her conduct establishes that the trial court was partial and prejudiced against her, resulting in a custody award contrary to Child's best interest. We cannot agree.

The trial court clearly based its decision on evidence of record and issued a ruling in Child's best interest, determining:

> [I]t is clear that Mother's fitness as a parent is in no small part dependent on Grandmother and her continued involvement in [Child's] life. The stated intention of the initial custody plan was not to dictate or micromanage the parents but rather to allow the parents to grow into their roles within a framework with both parents having significant time with [Child]. It was only after much consideration that the court found the custody of the child needed changed; it was clear that her future and welfare was clearly being endangered by Mother's unilaterally selfish and myopic actions.

1925(a) Opinion at 4.

While the trial court's language may seem harsh in some respects, the underlying bases for its conclusions appear in the record. The trial court commented:

> The fact that Mother lacks credibility with this court is of her own making and not the result of any bias or prejudice. The lack of honesty is most recently seen in what she did and did not make known to the play therapist, together with the not unexpected evaluation of the counselor.

*Id.* at 4-5.

The trial court concluded:

> Grandmother still stands out as the family member who best promotes the parent-child relationship. Grandmother's active role in [Child's] life remains and is reinforced by the new parenting plan. It is expected that Grandmother, and by extension Mother, is liberally permitted to spend additional quality time with [Child]. The best interests of [Child] are also served by promoting unfiltered development of her family life with Father, while maintaining her relationship with Mother. The unproductive actions of Mother are removed by taking away her ability to continuously thwart the plan. While a shared physical custody plan, with each parent having significant custodial periods, is still the ultimate goal, the lack of co-parenting progress and dearth of an educational plan, which is a tactic of Mother, needs remedial action now and a decision had to be made to protect [Child] and promote her future.

*Id.* 6-7.

We conclude that the trial court's order was not based on partiality, prejudice, bias or ill will but rather on the testimony and evidence presented. Therefore, Mother's second issue does not provide any basis for relief.

Order affirmed.

22

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2014